**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CONGOO, LLC, doing business as ADBLADE, | : <br> : Civil Action No. 16-401 (MAS) (TJB) <br> : |
| Plaintiff, | : **MEMORANDUM OPINION** <br> : |
| v. | : <br> : |
| REVCONTENT LLC, et al., | : <br> : |
| Defendants. | : |

**SHIPP, District Judge**

This case concerns a type of advertising known as "native advertising" which integrates online advertising in published content on various internet news and information sites. In its Complaint, Plaintiff Congoo, LLC, d/b/a Adblade ("Plaintiff") alleges that its competitor, Revcontent LLC ("Revcontent"), and John Daniel Lemp, Revcontent's founder and Chief Executive Officer (collectively, "Defendants"), published or caused to be published false and misleading native advertising. (ECF No. 1.) This matter comes before the Court on Plaintiff's motion for a preliminary injunction against Revcontent (ECF No. 6), and on Defendants' motion to dismiss the Complaint (ECF No. 19). The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to dismiss is denied and the Court shall hold an evidentiary hearing on Plaintiff's motion for a preliminary injunction.

I.   **Motion to Dismiss**

Defendants argue that the Complaint should be dismissed for the following reasons: (1) Defendants are not subject to personal jurisdiction in New Jersey; (2) venue for this action is improper in New Jersey; (3) Revcontent's Advertising Platform is entitled to immunity under § 230 of the Communications Decency Act; and/or (4) Plaintiff has failed to state a claim for false advertising under § 43(a) of the Lanham Act. (Defs.' Mot. to Dismiss ("MTD") Moving Br. 5-30, ECF No. 19-5.)

A.   **Personal Jurisdiction**

Defendants argue that they are not subject to personal jurisdiction in New Jersey because they do not have a physical presence in New Jersey (*id.* at 7-8), Revcontent's online business is not purposefully directed towards New Jersey (*id.* at 9-10), and, although "clients from across the count[r]y," including New Jersey, use Revcontent's website, the claims in the Complaint do not relate to or arise from the use of Revcontent's website (*id.* at 10-11). Rather than any purported contact with New Jersey, Defendants argue that Plaintiff's claims arise from actions undertaken in Florida. (*Id.* at 9.) In particular, Defendants assert that all of Revcontent's twelve full-time compliance associates monitor content and make "all decisions about accepting or rejecting [a]dvertisers or reviewing the content of their advertising . . . in Florida." (*Id.* at 4.)

"Where the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has continuous and systematic contacts with the forum state (general jurisdiction)." *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (internal quotation marks omitted). As such, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent

evidence." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 507 (D.N.J. 2011). "A plaintiff can meet the burden of proof and present a prima facie case for the court's exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

Here, Plaintiff alleges only specific jurisdiction. To establish specific jurisdiction, Plaintiff must show that Defendants intentionally sought the benefits and protections of New Jersey's laws by purposefully conducting activity directed at New Jersey and that the litigation arose out of or is related to those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Grimes v. Vitalink Commc'n Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). In its opposition to Defendants' motion to dismiss, Plaintiff asserts that Defendants purposefully conducted the following activities that were directed at New Jersey: (1) made regular contact with employees of publishers in New Jersey, including *Forbes* magazine, regarding the content and placement of advertising and about Plaintiff's business (Decl. of Alexander Solo ("Solo Decl."), Exs. 5-7, ECF Nos. 22-6 to 22-8.); (2) directly solicited New Jersey businesses, including NewsZoom, to switch its advertising to Revcontent (Decl. of Ashraf Nashed ¶¶ 47-48, ECF No. 6-2); and (3) created advertising content that specifically targeted New Jersey customers (Decl. of Collin Bentley ¶¶ 11-16, ECF No. 22-18).

The Court finds that the claims in the Complaint do arise from these alleged contacts with New Jersey. Accordingly, based on the evidence presented in support of the motion for a

preliminary injunction and in opposition to Defendants' motion to dismiss, the Court finds that Plaintiff has presented a prima facie case for the exercise of personal jurisdiction over Defendants.[1]

**B. Venue**

A motion to dismiss based on improper venue is governed by Rule 12(b)(3) of the Federal Rules of Civil Procedure. In contrast to personal jurisdiction, the burden is on the moving party to show improper venue. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). Similar to a motion based on personal jurisdiction, however, a court must accept the allegations of the complaint as true, unless contradicted by the defendant. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Venue is governed by 28 U.S.C. § 1391(b). Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* Here, the parties agree that the venue provisions under §§ 1391(b)(1)[2] and (b)(3)[3] are inapplicable. They, however, dispute whether § 1391(b)(2) is applicable. Mirroring the parties' dispute as to personal jurisdiction, the crux of the parties' dispute as to venue is what "events or

---

[1] Having found that there is specific jurisdiction based on Defendants' forum-related activities, the Court does not need to determine whether specific jurisdiction arises from Defendants' website activities.

[2] John Daniel Lemp is a resident of Florida. (Decl. of John Daniel Lemp ¶ 2, ECF No. 19-3.) Revcontent is incorporated under the laws of Florida and its offices are located in Florida, New York and Bath, England (U.K.). (*Id.* ¶¶ 5-6.)

[3] Defendants contend, and Plaintiff does not dispute, that venue is proper in Florida. (Defs.' MTD Moving Br. 14.)

4

omissions" give rise to the claims in the Complaint. As discussed above, Plaintiff has alleged that a substantial part of the events giving rise to the claims in the Complaint occurred in New Jersey. *See Al-Ghena Int'l. Corp. v. Radwan*, 957 F. Supp. 2d 511, 531 (D.N.J. 2013) ("[W]hile not identical, the specific jurisdiction analysis considers many of the same factors required for determining proper venue, particularly where, as here, both questions turn on the substantiality of events occurring in the forum"). These events include Revcontent's solicitation of New Jersey businesses through the use of allegedly false and misleading advertising practices and its close interaction with New Jersey businesses regarding the content and placement of advertisements. (Pl.'s MTD Opp'n Br. 8-9.) Accordingly, the Court finds that Defendants have failed to show that venue is improper in New Jersey.

### C. Immunity Under the Communications Decency Act

Defendants argue that even if the Court finds that they are subject to personal jurisdiction and that venue is proper, the Complaint should nonetheless be dismissed because they are immune from liability for the allegations in the Complaint pursuant to § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. (Defs.' MTD Moving Br. 14-15.) Section 230(c)(1) of the CDA provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In addition, § 230(e) provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). "Accordingly, interactive computer service providers cannot be held liable for publishing harmful information that is generated by a third party." *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015).

While Plaintiff does not dispute that "interactive computer service providers" are immune from liability for publishing information that is generated by a third party, Plaintiff disputes that Revcontent is merely an "interactive computer service provider." (Pl.'s MTD Opp'n Br. 17-18.) In its opposition, Plaintiff argues, as an initial matter, that it is premature on a motion to dismiss to determine Revcontent's role in the subject advertisements. (*Id.*) Plaintiff additionally argues that it has sufficiently pled that Revcontent is an "information content provider." (*Id.* at 19-29.) Specifically, the Complaint alleges that:

- Defendants have published or caused to be published many impressions of native advertising unit ads ("Defendants Ads") with various Published Websites, including Publisher Websites that were previous clients of Plaintiff.
- Many, if not most of Defendants' Ads and the Advertisement Websites to which the Ads redirect unsuspecting consumers, employ false and misleading advertising intended to deceive innocent consumers out of the significant monies by charging their debit cards or credit cards.
- ***Defendants have employed*** the above stated false and misleading representative in advertising to generate greater income ***from their Ads*** and those of Defendants' Advertisers. (emphasis added).)

(Compl. ¶¶ 28, 30, 79.)

"An interactive computer service provider that is also an 'information content provider' of certain content is not immune from liability arising from publication of that content." *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009). "The CDA defines the term information content provider as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.'" *Id.* (quoting 47 U.S.C. § 230(f)(3)). Construing the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pled that Revcontent was responsible in part for the development of the subject advertisements. Thus, at this juncture,

the Court finds that Revcontent has not established that it is entitled to immunity under § 230 of the CDA.

### D. Section 43A Lanham Act Claim

Finally, Defendants argue that Plaintiff's false advertising claim fails because Plaintiff did not plead that Revcontent made a false advertising statement; and because Plaintiff lacks standing under § 43(a) of the Lanham Act. (Defs.' MTD Moving Br. 25.) In its opposition, Plaintiff argues that Defendants' first argument for dismissal of its § 43A claim is simply a variation of its § 230 immunity argument, namely Defendants contend that Revcontent was not involved in creating or developing the allegedly false ads. (Pl.'s MTD Opp'n Br. 29.) The Complaint, however, alleges, inter alia, that: "***Defendants have employed the above stated false and misleading representations in advertising*** to generate greater income from ***their Ads*** and those of Defendants' Advertisers." (Compl. ¶ 79) (emphasis added). In addition, the Complaint also alleges that: "***Defendants*** in connection with their services ***have used and continue to use false and misleading descriptions*** of fact and false and misleading representations of fact in commercial advertising that misrepresent the nature, characteristics, and qualities of ***their*** . . . services or commercial activities. (*Id.* ¶ 83) (emphasis added). Construing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that Defendants participated in or contributed to the use of false and misleading statements in the subject advertisements.

Next, the Court rejects Defendants' argument that Plaintiff lacks standing under § 43(a) of the Lanham Act. (Defs.' MTD Moving Br. 28.) Here, Plaintiff has alleged that "[b]y its false and misleading representations in advertisements, Defendants . . . have been able to generate greater income from ads and thereby to offer their services at more attractive rates to Plaintiff's Publishers than Plaintiff can because Plaintiff does not employ false and misleading representations in its

7

advertising." (Compl. ¶ 85.) Construing this allegation in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled "an injury to a commercial interest in sales or business reputation proximately caused by [Revcontent's] misrepresentations." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). This allegation satisfies the standing requirement for a § 43(a) claim. *Id.*

## II. <u>Preliminary Injunction</u>

Rule 65 of the Federal Rules of Civil Procedure governs the imposition of injunctive relief in federal court. Rule 65 "empowers district courts to grant preliminary injunctions." *Doe v. Banos*, 713 F. Supp. 2d 404, 410 (D.N.J.), *aff'd*, 416 F. App'x 185 (3d Cir. 2010). "Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). Injunctive relief is inappropriate "when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks omitted). In determining whether to grant preliminary injunctive relief, courts look to several factors:

> [a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These equitable factors are just that - factors to be balanced against one another. All of these factors need not be considered by the Court, if the factors considered are dispositive; in particular, an injunction shall not issue absent

a showing of both a likelihood of success on the merits and a likelihood of irreparable harm. *Id.* at 21-22; *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90-91 (3d Cir. 1992).

Here, it is not clear from the Plaintiff's motion papers and accompanying affidavits that Plaintiff will be able to satisfy the factors required for the extraordinary remedy requested. In particular, the Court finds that issues of disputed fact remain with respect to the dispositive preliminary injunction factors. Namely, with respect to the likelihood of success on the merits, Defendants' assertion of § 230 immunity requires resolution of the parties' dispute as to Defendants' role in the creation and development of the subject advertisements. *See* supra 5-7. Likewise, Plaintiff's assertion of irreparable harm requires resolution of the parties' dispute as to whether Plaintiff's alleged market loss is purely economic and reparable loss. *Compare Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.*, 99 F. Supp. 3d 461, 500 (D.N.J. April 16, 2015) (finding that Plaintiff failed to "demonstrate[] that the loss of market share, sales, and/or price erosion, even if proven, constitute anything other than purely economic and reparable loss; such losses are insufficient to support a finding of irreparable harm"), *and Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 864 (Fed. Cir. 1987) (noting that "***in the highly competitive pacemaker industry***, a loss in market share caused by an injunction could result in irreparable harm") (emphasis added).

Accordingly, the Court finds that these issues of disputed fact warrant an evidentiary hearing. *Cf. Bradley v. Pittsburg Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) (stating that an evidentiary hearing is not required if "the facts are undisputed and the relevant factual issues are resolved").

### III.    Conclusion

For the reasons discussed above, Defendants' motion to dismiss is denied.  The Court shall hold an evidentiary hearing on Plaintiff's motion for a preliminary injunction.  The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April 15, 2016