UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONGOO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>REVCONTENT LLC et al,<br><br>Defendants. | Civil Action No. 16-401 (MAS)<br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

This matter has been opened to the Court upon Motion (Docket Entry No. 91) by Plaintiff Congoo, LLC ("Plaintiff") seeking an Order compelling the inspection and production of Defendants Revcontent LLC and John Daniel Lemp's ("Defendants") source code. Defendants oppose Plaintiff's motion (Docket Entry No. 93). The Court has fully reviewed the submissions in support of and in opposition to Plaintiff's motion as well as the arguments made during the July 19, 2017 motion hearing. (Docket Entry No. 108). For the following reasons, Plaintiff's Motion to Compel is DENIED.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

The parties are familiar with the facts of this matter, therefore, they are not restated herein at length. On January 22, 2016, Plaintiff filed a complaint against Defendants for: (1) false and misleading representations in advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition at common law; (3) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*; and (4) tortious interference with contractual and business relations.

1

*Pl.'s Compl*. at 1.

In its discovery requests, Plaintiff sought information regarding Defendants' software and source code. On May 6, 2016, Defendants served Plaintiff with written objections, in conjunction with an agreement to provide a responsive explanation of how Defendants' platform works without providing the source code. On June 17, 2016, Plaintiff proposed a written stipulation to avoid production of the source code, but on July 7, 2016, Defendants notified the Court that the parties could not agree on the proposed language. The parties engaged in negotiations between counsel to attempt to resolve the matter, but despite the communications, the parties were unable to resolve the issue of whether Defendants had to produce the source code.

In November and December 2016, Plaintiff raised the issue of its need for production of Defendants' source code in the first discovery issues presented to this Court. On February 10, 2017, a discovery conference was held to discuss the issue of production of the source code. This Court determined that the necessary inquiry was to first determine whether Defendants could satisfy their discovery obligations without revealing the actual source code. This Court stated that the parties should make their full submission to the Court on the issue.

On March 10, 2017, Plaintiff filed the instant motion to compel inspection and production of Defendants' source code. (Docket Entry No. 91). Specifically, Plaintiff seeks the following:

Request No. 36
Source code sufficient to understand the inputs to, outputs of, and functionality of the algorithm used to populate Revcontent's widgets with the native ads (i.e., an image and headline linked to a URL).

Request No. 40
All of Revcontent's source code related to the creation of Native Ads.

Interrogatory No. 41
All software (including but not limited to source code and executables) and documentation that Revcontent obtained from, or provided to, embed.ly that relates to the creation of Native Ads based upon a link to a webpage.

Interrogatory No. 42
Documents describing Revcontent's platform that creates Native Ads based upon a link for a webpage including, but not limited to, software configuration management records such as the records produced as RC030200-202.

Interrogatory No. 43
All software (including but not limited to source code and executables) and documentation related to Revcontent's algorithm used to populate widgets with Native Ads (the requested documents include, but are not limited to, software configuration management records such as the records produced as RC030200-202).

Interrogatory No. 44
Software (including but not limited to source code and executables) and documents related to the aspect of Revcontent's platform that dynamically fills in geographical variables in Native Ads (the requested documents include, but are not limited to, software configuration management records such as the records produced as RC030200-202).

*Pl.'s Br. in Supp. of Mot*. at 6.

Plaintiff states that the source code is highly relevant because it pertains to a central issue in the case, that is, whether the Defendants were involved in the creation of the content in false and misleading ads. Plaintiff asserts that production of the source code is necessary to prove their claim. Plaintiff notes that the Hon. Michael A. Shipp, U.S.D.J. stated that Defendants' alleged involvement in the creation and development of the advertisements is a "primary issue" in the case. Plaintiff further argues that if Defendant is able to withhold the source code Defendant will be free to argue at trial that it is not involved in the creation of ads, therefore, Plaintiff needs the source code to rebut Defendant's argument. *Pl.'s Br. in Supp. of Mot*. at 7.

Additionally, Plaintiff argues that the Discovery Confidentiality Order entered by the Court on September 30, 2016 (Docket Entry No. 69) fully protects the confidentiality of

Defendant's source code. *Id.* at 8.

Finally, Plaintiff argues that the alternatives proposed by Defendant are not sufficient as they would deny Plaintiff direct and objective evidence as to Defendant's involvement in the creation of the advertisements. *Id.* at 9.

Defendants argue that requiring it to produce its source code to a competitor would cause irreparable harm to its business. *Def.'s Opp'n Br.* at 1. Defendants state that it has provided Plaintiff with evidentiary support concerning the few software functions that are relevant to its claims. *Id.*

Defendants further argue that the functionality of its technology can be explained through testimony and documentary evidence, therefore, the source code is irrelevant and unnecessary. Defendants note that it has already agreed to stipulate how its technology functions and has provided a detailed declaration from its Chief Product Officer, Chris Maynard, describing the functionality of that technology, therefore, there is no basis for the disclosure of the source code. *Id.* at 2.

Defendants state that "[f]or disclosure to be warranted, the source code sought must be relevant and necessary to the prosecution of the case, and if alternatives to disclosure are available, a court will not be justified in ordering a disclosure." *Id.* (citing *Telspace, LLC v. Coast to Coast Cellular, Inc.*, 2014 WL 4364851, *4 (W.D. Wash. Sept. 3, 2014).

## II. ANALYSIS

The Court has fully reviewed and considered all arguments raised by the parties. The Court has broad discretion in deciding discovery issues such as that raised by the parties here. *See Gerald Chamles Corp. v. Oki Data Americas*, *Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at

*1 (D.N.J. Dec. 11, 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]") Indeed, it is well settled that the appropriate scope of discovery and the management of requests for discovery are left to the sound discretion of the Court. *See Salamone v. Carter's Retail, Inc.*, Civil Action No. 09-5856 (GEB) 2011 WL 310701, *5 (D.N.J. Jan. 28, 2011); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of Court).

In order for the production of source code to be compelled, Plaintiff must prove that it is relevant and necessary to the action. See *In re Apple & AT&TM Antitrust Litig.,* 2010 U.S. Dist. LEXIS 39637 (N.D. Cal. March 26, 2010)*; Synopsys, Inc. v. Nassda Corp.,* 2002 WL 32749138 (N.D. Cal. Sept. 16, 2002; *Centurion Indus. v. Warren Steurer and Assoc*., 665 F.2d 323 (10th Cir. 1981). The relevancy and necessity requirements must be met, regardless of whether a Discovery Confidentiality Order exists. Courts have held that when source code[1] is requested not only must it be relevant and necessary to the prosecution or defense of the case but when alternatives are available, a court will not be justified in ordering disclosure. *Telspace, LLC v. Coast to Coast Cellular, Inc.*, 2014 WL 4364851, *4 (W.D. Wash. Sept. 3, 2014) (citing *Hartley Pen. Co. v. United States District Court for S.D. Cal.*, 287 F.2d 324, 330-31 (9th Cir. 1961), *Generac Power Sys., Inc. v. Kohler Co.*, 2012 WL 2049945, *2 (E.D. Wis. June 6, 2012).

The majority of cases cited by Plaintiff are distinguishable in that they are patent cases in which production of the source code was necessary to prove infringement claims. See *Drone Techs., Inc. v. Parrot S.A*., 2014 U.S. Dist. LEXIS 116754 (W.D. Pa. Aug. 14, 2014); *MVS Studio,*

---

[1] Although *Telspace* refers to "trade secrets", the Court notes that the case specifically involves disclosure of source code.

*Inc. v. Bingo Bean, LLC*, 2011 U.S. Dist. LEXIS 157127 (C.D. Cal. June 24, 2011); *Generac Power Sys. Inc. v. Kohler Co.*, 2012 U.S. Dist. LEXIS 190594 (E.D. Wis. June 6, 2012). The Court finds that unlike in a patent case alleging infringement, Plaintiff does not need to review the actual code because its interest is in the specific functionalities of the software, not the underlying code. See *Telspace*, 2014 WL at *4, Generac 2012 WL at *2. The fourth case cited by Plaintiff also differs in that it is a breach of contract case in which the production of the source code was necessary in order to reveal the quality of the online banking product that Plaintiff delivered and whether Plaintiff fully performed under the contract. *Metavante Corp. v. Emigrant Sav. Bank*, 2008 U.S. Dist. LEXIS, *4 (E.D. of Wis. October 24, 2008).

In this case, Plaintiff alleges that the Defendants have employed "false and misleading representations in advertising to generate greater income from their Ads and those of Defendants' Advertisers in order to offer its services at more attractive rates than Plaintiff can offer, and to take Plaintiff's business, erode Plaintiff's market share and damage Plaintiff's goodwill in association with Plaintiff's native advertising business." *Pl.'s Amended Compl*. ¶83, Docket Entry No. 75. The focus here is *what* Defendants are doing, that is, whether they are creating ads or influencing the creation or content of the ads. The Court is not convinced that an understanding of the Defendants' influence on or creation of the ads requires production of the technology, i.e., the source code, utilized by the Defendants. Rather, the Court is persuaded that through witness testimony an understanding of the functionality of the software algorithm as it relates to issues in this case, e.g., selection of higher paying Content Recommendations, can be adequately addressed.

Assuming, however, that the source code is relevant, the Court finds that its highly confidential nature is such that it cannot be adequately safeguarded by a Discovery Confidentiality

6

Order and therefore outweighs the need for production. The proprietary nature of Defendants' source code is outlined in the declaration of Revcontent's Chief Product Officer, Chris Maynard which includes the following information:

> Defendant has spent $7 million in identifiable costs on the development of its proprietary software. The investment may be closer to $10 million because the Algorithm has been in development by a team of developers and Defendants' senior management for the past eight years.
>
> Defendants' source code is comprised of millions of lines of code, which are all heavily protected through various methods of secrecy and security, including being stored in secure code repositories under lock and key. A limited number of persons at Revcontent are granted access to Revcontent's code repositories. The actual systems that run the Algorithm are securely locked down with only key development/operations employees authorized to access them excluding, even, Mr. Lemp. Moreover, most individual developers do not routinely access and understand the entire Source Code; instead they only work on pieces of it. Only five software developers out of 132 total employees routinely access and understand the source code.
>
> In fact, neither our in-house lawyers nor any of our outside counsel is permitted to access and/or view Revcontent's highly proprietary Source Code.
>
> Defendants' Algorithm is what gives Defendant a competitive advantage. The Algorithm enables Defendants' system to serve the most relevant content recommendations for a particular visitor to a Publisher's Website, thereby increasing the visitors' engagement and substantially contributing to the success and effectiveness of the Platform for website visitors and Publishers.

*Decl. of Chris Maynard*, ¶¶11, 12, 13, 14.

A weighing of the competing interests: an ability to elicit facts for a full assessment of the claims and defenses, on the one hand, and protecting trade secrets, on the other, must be made with full consideration of factors, including availability of other means of proof and dangers of disclosure. Given the proprietary nature of Defendants' source code, which is not in dispute, and

the irreparable harm that could occur if it is produced, the Court finds that production of the source code is not warranted, especially in light of Defendants' representation that "the present discovery dispute concerns only several discrete functions of [Defendants'] technology." *Decl. of Chris Maynard*, ¶16. Moreover, weighing the competing interests, the existing Discovery Confidentiality Order is insufficient to justify production of Defendant Revcontent's highly protected trade secret. See *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, *260 (S.D.N.Y. July 1, 2008) ("the protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as non-disclosure. There is no occasion to rely on them, without a preliminary proper showing justifying production of the search code.")

The Court finds that Plaintiff has not met its burden of demonstrating that production of the source code is relevant and necessary. The Court further finds that the information provided by Defendants regarding the source code and the additional information that Defendants are willing to provide regarding the functionality of the source code is sufficient and that production of the actual source code is not necessary for an adequate assessment of the claims and defenses in this case. Specifically, Defendants have provided a Declaration from Defendants' Chief Product Officer in which he explains the functionality of Defendants' technology. See *Decl. of Chris Maynard*, ¶¶15-24. Defendants have also provided a proposed stipulation as to the source code which describes how the technology determines which native ads will be displayed in the Revcontent widget from the pool of available native ads. See *Cert. of Christopher A. Barbarisi*, Exh. 3. The Court notes that Plaintiff can also depose the employees involved in the creation of the ads in order to prove its false and misleading advertising claims. Defendants stated on numerous occasions during the July 19, 2017 motion hearing that they are willing to provide all of the

information relating to how the source code functions, just not the source code itself:

> Mr. Bateman: "And we will provide the – we'll provide Mr. Maynard or anyone else who they want to take, because we will identify the factors on how it works, and we'll identify the factors that go into it, and we'll identify relatively which ones are the most important, and we've done that already." *7/19/17 Tr*. at 32:22-25 to 33:1.

> Mr. Bateman: "It's – and I think we – you know, if Mr. Kennedy had any other questions, I think he could propose them to us. Does this – if you're trying to prove a particular point about how it functions, ask us, and we'll tell you." *Id*. at 33: 2-5.

> Mr. Bateman: "As to the geo-tagging and embedly, I honestly can't imagine why we can't stipulate to how these work." *Id*. at 33:14-15.

> Mr. Bateman: "So the only thing the source code talks about are – or that this issue is about is how do those six small thumbnail ads get up on a publisher page?...we can describe in great detail how that happens." *Id*. at 24:4-7, 14.

The Court notes that It considered compelling production of a portion of the source code[2] but the parties made it clear during the July 19, 2017 motion hearing that the portion that Plaintiff seeks is the portion of the code that Defendants are most strongly against providing:

> Mr. Bateman: "But it is a super trade secret. It is a real competitive – competitively important thing, and producing that would not be something that we could do on a piecemeal basis." *Id*. at 13:11-14.

> Mr. Bateman: "I'll call it the brain; it's the brain. It's the part of this that is secret, the most secret and most important. And so that would be the thing we resist the most." *Id*. at 14: 19-22.

---

[2] "You want the algorithm, by the way, is what I understand. And they're telling me that's the brain, so I can't parse out part of the source code, which is something I was going to explore." *7/19/17 Tr*. at 36:7-10.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel is DENIED.   An appropriate Order follows.

Dated: August 10, 2017

                                              s/Tonianne J. Bongiovanni
                                              **HONORABLE TONIANNE J. BONGIOVANNI**
                                              **UNITED STATES MAGISTRATE JUDGE**