**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONGOO, LLC d/b/a ADBLADE,<br><br>Plaintiff,<br><br>v.<br><br>REVCONTENT, LLC, and JOHN DANIEL LEMP,<br><br>Defendants. | Civil Action No. 16-401 (MAS) (TJB)<br><br>**MEMORANDUM OPINION**<br>**FILED UNDER TEMPORARY SEAL** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Revcontent, LLC ("Revcontent") and John Daniel Lemp's ("Lemp") (collectively with Revcontent, "Defendants") Motion for Partial Summary Judgment. (ECF No. 144.) Plaintiff Congoo, LLC d/b/a Adblade ("Adblade" or "Plaintiff") opposed (ECF No. 154), and Defendants replied (ECF No. 157). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth in this Memorandum Opinion, Defendants' Motion is granted.

## I. BACKGROUND[1]

The parties are competing native and content network advertising companies, or advertising aggregators, that work with advertisers (*i.e.*, businesses offering products and services for sale) and publishers (*i.e.*, content websites that publish native advertisements). (DSMF ¶ 4; PSMF ¶ 2.) Native advertising is online advertising that is customized and integrated with published content on various news or information websites. (PSMF ¶ 3.) "Direct response advertising" is a form of native advertising, in which a consumer response is sought. (*Id.*) For example, when a user clicks on a native advertisement, the user is brought to an initial landing page promoting a product or service and a subsequent order page to make a purchase. (*Id.* ¶ 4.) Advertising aggregators track the number of "clicks" and "cost per click" for each advertisement to determine the fees owed by advertisers to the aggregator. (*Id.* ¶ 5.) Publishers derive substantial revenue through advertising and usually accept native advertising from the advertising aggregator who pays the higher rate, higher guaranteed minimums, or generates greatest revenue. (*Id.* ¶ 6.) The industry is extremely competitive. (DSMF ¶ 7.)

Adblade pioneered native advertising and, from 2008 through 2014, enjoyed substantial business and a strong and recognized leadership position in the market. (PSMF ¶¶ 3, 8.) In establishing its business, Adblade sought to avoid working with advertisers who use "false and deceptive" advertisements, such as "negative option membership charges," also known as "undisclosed rebills." (*Id.* ¶ 9.) An undisclosed rebill is an advertisement that offers a customer a

---

[1] Undisputed and supported material facts are gathered from Defendants' Statement of Material Facts ("DSMF") (ECF No. 145-2); Plaintiff's Responses to Defendants' Statement of Material Facts ("PRDSMF") (ECF No. 154-1 at *1–7); Plaintiff's Supplemental Statement of Material Facts ("PSMF") (ECF No. 154-1 at *7–19); and Defendants' Responses to Plaintiff's Supplemental Statement of Material Facts ("DRPSMF") (ECF No. 158-1). Pages preceded by asterisks refer to page numbers of the ECF header.

trial of a product at a low cost, but then automatically enters the customer into a high-cost membership. (*Id.*) Moreover, the terms of the rebill are hidden in the terms and conditions. (*Id.*)

Revcontent is a second comer in the market. (PSMF ¶ 11.) In early 2015, it began targeting Adblade's publishers and has since captured at least thirty-three publishers from Adblade. (*Id.* ¶ 12; DRPSMF ¶ 25.) Revcontent promised higher revenues to certain Adblade publishers. (PSMF ¶ 13.) Revcontent was involved in the creation of "false and misleading" ads, including undisclosed rebills, and further maintained and enforced guidelines regarding those rebills. (*Id.* ¶¶ 18, 22.) Through compliance associates, Revcontent instructed advertisers to change the language on ads from "free trial" to "trial" and to add a link to the terms and conditions, and subsequently approved those undisclosed rebills. (*Id.* ¶ 19.) According to Adblade, Revcontent's ads were false and misleading. (*Id.* ¶ 24.)

On five separate occasions, Defendants made remarks about Adblade to publishers: (1) Adblade does not provide "honest returns to publishers"; (2) Adblade has been "robbing" the publisher; (3) Adblade's ads are "garbage"; (4) Adblade has shortchanged publishers; and (5) Adblade has been running "filth" on publishers' sites. (PSMF ¶ 30; DRPSMF ¶ 30.)

In January 2016, Adblade initiated this action against Defendants. On November 3, 2017, the Court granted Defendants partial summary judgment on Plaintiff's federal false advertising claim and state-law unfair competition claim relating to consumer products. *Congoo, LLC v. Revcontent LLC*, No. 16-401, 2017 WL 5076397 (D.N.J. Nov. 3, 2017). Defendants now move for summary judgment on Plaintiff's remaining claims.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted).

## III. DISCUSSION

Defendants seek partial summary judgment on Plaintiff's remaining claims: (1) tortious interference claim based on false and misleading advertisements; and (2) Lanham Act, New Jersey state-law unfair competition, tortious interference, and defamation claims based on Defendants' false and misleading representations about Adblade and its business. (*See generally* Defs.' Moving Br., ECF No. 145-1.)

A.  **Tortious Interference Claim**

In order to prevail on a tortious interference claim under New Jersey law, "[Plaintiff] must establish four elements: (1) a protected interest—either a prospective economic or contractual relationship; (2) malice, *i.e.*, intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the (prospective economic or contractual) gain; and (4) resulting damages." *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 420 (D.N.J. 2016); *see also Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989). Defendants argue that Plaintiff cannot prevail on its tortious interference claim because it cannot prove malice and causation. (Defs.' Moving Br. 5–11.)

1.  **Malice**

Malice is not "ill will," rather, "it means that harm was inflicted intentionally and without justification or excuse." *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001) (citation omitted); *Printing Mart*, 563 A.2d at 37 (citation omitted). "Although competition may constitute a justification, a defendant claiming a business-related excuse must justify not only its motive and purpose, but also the means used." *Burns*, 770 A.2d at 1171 (internal citations omitted). A court will generally look at "whether the conduct was sanctioned by the 'rules of the game'" or merely "healthy competition." *Id.* at 1170. "The conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of law.' The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Id.* at 1170–71 (citations omitted).

Plaintiff argues that "Revcontent interfered with Adblade's contracts by obtaining . . . business through . . . offers of contracts that knowingly used false and misleading ads." (Pl.'s Opp'n Br. 17, ECF No. 154.) According to Plaintiff, "documents provided with the [A]mended

5

[C]omplaint" and other "substantial evidence" demonstrate that "[t]hese ads dupe consumers, unjustly enrich those who use them[,] and violate the law." (*Id.* (citing Am. Compl., ECF No. 75; Ex. A to Am. Compl., ECF No. 75-1; PSMF ¶¶ 11–26.)

Given that this litigation has progressed past mere review of the pleadings, the Court finds Plaintiff's reference to allegations in the Amended Complaint unconvincing. Plaintiff cites generally to Exhibit A of the Amended Complaint, which is a stipulated final judgment and order for permanent injunction entered in an action brought by the Federal Trade Commission ("FTC") against Clickbooth.com, LLC, Integraclick, LLC, and Lemp (*id.*; Ex. A to Am. Compl.), but Plaintiff does not direct the Court to any particular provision of the order that would affect the Court's malice determination.[2] (*See generally* Pl.'s Opp'n Br.) The injunction does not appear to permanently restrain Lemp "from using negative option membership plans [or undisclosed rebills] in advertising," as Plaintiff argues. (*See generally* Ex. A to Am. Compl.)

Also unavailing are the two sentences Plaintiff dedicated to explaining why Defendants' means were inappropriate: "Adblade has also submitted substantial evidence . . . that false and misleading ads are an inappropriate means for interfering with Adblade's business. (*See* PS[]MF ¶¶ 11–26.) These ads dupe consumers, unjustly enrich those who use them[,] and violate the law." (Pl.'s Opp'n Br. 17.) Plaintiff fails to direct the Court to any portion of the record that supports any of these three reasons—or, at least, Plaintiff fails to connect the dots.

Although Plaintiff uses the terms "negative option membership plans," "undisclosed rebills," and "false and misleading ads" interchangeably throughout its brief and Statement of Facts (*e.g.*, PSMF ¶¶ 13–15, 17–18), Plaintiff does not demonstrate that negative option

---

[2] The lack of citations to the 28-page order for permanent injunction "hampers the Court's responsibility to identify whether disputes of material facts exist." *Perez v. Camden Municipal Court*, No. 14-7473, 2016 U.S. Dist. LEXIS 174711, at *2 n.3 (D.N.J. Dec. 19, 2016).

membership plans and undisclosed rebills are "false and misleading." Plaintiff provides no evidence on the ethical standards of the industry. Plaintiff points to nothing in the injunction entered against Lemp that would show "undisclosed rebills" are illegal. Lastly, even if undisclosed rebills are false and misleading, this fact does not necessarily mean that the actions Defendants took in obtaining the publishers' business were false or misleading.

Plaintiff has not, therefore, demonstrated that Defendants' actions were "injurious and transgressive of generally accepted standards of common morality or of law." *Burns*, 770 A.2d at 1170–71. The record, viewed in the light most favorable to Plaintiff, creates no reasonable inference that Defendants acted with malice.

### 2.     Causation

To prove that Defendants' tortious interference caused the loss of Plaintiff's prospective gain, Plaintiff must show that, "if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Printing Mart*, 563 A.2d at 37 (internal quotation marks and citation omitted).

Plaintiff argues that both Jeffrey Buchakjian's expert report and the record contains evidence of causation. (Pl.'s Opp'n Br. 19–20 (citing Buchakjian Report, Ex. A to Solo Decl., ECF No. 154-3; PSMF ¶¶ 8–26).) But Mr. Buchakjian is Plaintiff's damages expert (PSMF ¶ 10), and his report contains no evidence on causation (*see generally* Buchakjian Report). In providing his opinion on damages, Mr. Buchakjian assumed "Defendants will be found liable on (a) the claim for tortious interference with contractual and business relationships, and (b) the claims for false

and misleading representations about Adblade and its business and for defamation." (Buchakjian Report 1.) To that end, the expert "offer[s] no opinions on liability."[3] (*Id.*)

Moreover, many of the facts that Plaintiff avers show causation relate to Revcontent's business practices. (*E.g.*, PSMF ¶¶ 8–24.) The remaining facts are directed to Adblade's loss of business, but do not address causation. (*E.g.*, PSMF ¶¶ 25–26.) Plaintiff does not demonstrate a genuine dispute of material fact as to the causation element of its tortious interference claim. Because Plaintiff fails to establish the malice and causation requirements of its tortious interference claim, the Court grants Defendants' Motion for Summary Judgment on this claim.

### B. Claims Related to Defendants' Representations about Adblade

Defendants also argue that Plaintiff cannot demonstrate causation in support of its remaining Lanham Act, unfair competition, tortious interference, and defamation claims that relate to Defendants' representations about Adblade. (Defs.' Moving Br. 11–17.)

A plaintiff suing under the Lanham Act "must show economic or reputational injury flowing directly from the deception wrought by the defendant[s'] advertising" and that the injury "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). "Generally, the determination of proximate causation is left to the jury for its factual determination . . . [but t]he issue can be addressed, as a matter of law, . . . where the outcome is clear . . . ." *Congoo*, 2017 WL 5076397, at *5 (internal quotation marks and citations omitted). Courts have applied the identical test to New Jersey state-law unfair competition claims. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994) ("[T]he federal law of unfair

---

[3] As with the order for preliminary injunction, Plaintiff's indefinite citations to Mr. Buchakjian's 59-page expert report "hampers the Court's responsibility to identify whether disputes of material facts exist." *Perez*, 2016 U.S. Dist. LEXIS 174711, at *2 n.3.

8

competition under § 43(a) is not significantly different from the New Jersey [common] law of unfair competition and [courts] have applied the identical test to both claims." (internal quotation marks and citation omitted).

To establish the causation element of a tortious interference claim, the plaintiff must show that, "if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Printing Mart*, 563 A.2d at 37 (citation omitted). Similarly, to prove defamation, plaintiff must "prove actual harm, pecuniary or otherwise, to [its] reputation through the production of evidence." *W.J.A. v. D.A.*, 43 A.3d 1148, 1160 (N.J. 2012).

Plaintiff does not dispute that causation must be established for each of the remaining claims directed to Defendants' direct advertising and statements. (*See generally* Pl.'s Opp'n Br.) Plaintiff argues that its sales data and expert report show Defendants' false and misleading, or otherwise defamatory, statements to publishers resulted in Adblade's loss of business. (Pl.'s Opp'n Br. 24, 27.) Plaintiff does not, however, direct the Court to the sales data. (*See id.*) And, although Mr. Buchakjian's expert report includes sales data, it does not provide an opinion as to causation. *See supra* Section III.A.2. That "[Mr. Buchakjian] only included publishers where it was clear that Adblade had a history of consistent revenue with that publisher, Revcontent approached and obtained business from that publisher, and Adblade's revenue from that publisher declined and was replaced" (Pl.'s Opp'n Br. 20) is of no consequence because Mr. Buchakjian *assumed* Defendants' liability in providing his *damages* analysis, *supra* Section III.A.2. Also unavailing is the fact that "Adblade lost many more significant publishers to Revcontent between 2014 and 2016 than it lost over that same time to [other] major competitors, . . . who do not obtain contracts that

9

use undisclosed rebills." (Pl.'s Opp'n Br. 20.) This fact does not demonstrate that Revcontent's statements about Adblade resulted in Adblade's loss of business.

In summary, Plaintiff fails to direct the Court to evidence that Revcontent's allegedly false or defamatory statements about Adblade caused harm to Adblade. There is no evidence of a nexus between Revcontent's statements and any publisher's decision to discontinue business with Adblade. Plaintiff's causation theories are speculative and unsupported. The Court, accordingly, grants Defendants' Motion as to Plaintiff's remaining claims.[4]

## IV.  CONCLUSION

For these reasons, the Court grants Defendants' Motion for Summary Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because Plaintiff fails to prove the causation requirement of its Lanham Act claim, the Court does not address Defendants' remaining arguments.

10